1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   RODRIGO A. PAZ HERNANDEZ,                    No. 1:25-cv-00986-KES-CDB (HC)

10                 Petitioner,

11        v.                                      ORDER GRANTING MOTION FOR
                                                  TEMPORARY RESTRAINING ORDER

12   MINGA WOFFORD, Field Office Director,        Doc. 4
     Mesa Verde, Office of Detention and
13   Removal, POLLY KAISER, Acting Field
     Office Director of the San Francisco
14   Immigration and Customs Enforcement
     Office, TODD M. LYONS, Acting Director
15   of United States Immigration and Customs
     Enforcement, KRISTI NOEM, Secretary of
16   the United States Department of Homeland
     Security, and PAMELA BONDI, Attorney
17   General of the United States,

18                 Respondents.

19

20

21        Petitioner Rodrigo A. Paz Hernandez is a noncitizen who has been in immigration

22   removal proceedings since May 2024.  Petitioner presents evidence that, after being briefly

23   detained upon his entry into the United States, he was released in May 2024 and thereafter

24   complied with his release requirements and appeared at all immigration court proceedings as

25   required.  On July 8, 2025, after petitioner appeared at the San Francisco Immigration Court for a

26   scheduled hearing, Immigrations and Customs Enforcement ("ICE") agents arrested him in the

27   court hallway.  ICE transported petitioner to a facility in Bakersfield, California, where he

28   remains detained.

                                    1

On August 1, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2.  For the reasons set forth below, the Court grants petitioner's motion for temporary restraining order and orders that the government release petitioner immediately and not re-detain him unless it proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community.

## I.    Background

Petitioner is a citizen of El Salvador.  Doc. 4-1 at ¶ 6; Doc. 10-1 at ¶ 6.  He fled El Salvador in 2024 due to its ongoing state of exception.  Doc. 4-1 at ¶ 6.  El Salvador's state of exception suspends certain constitutional guarantees for El Salvador's citizens, permitting law enforcement there to arrest and detain citizens without cause.  *Id.*; *El Salvador 2023 Human Rights Report*, U.S. Dep't of State, https://www.state.gov/wp-content/uploads/2024/02/528267_EL-SALVADOR-2023-HUMAN-RIGHTS-REPORT.pdf.

Petitioner arrived in the United States on May 6, 2024.  Doc. 4-1 at ¶¶ 7, 9; Doc. 1-3 at 1; Doc. 10-1 at ¶ 6.  After he crossed the border, he was arrested on a warrant and detained by DHS agents.  Doc. 4-1 at ¶ 9; Doc. 1-3 at 1; Doc. 10-1 at ¶ 6.  Petitioner explained to the agents that he feared returning to El Salvador.  Doc. 4-1 at ¶ 9.  The agents provided him with a notice to appear for removal proceedings.  Doc. 10-1, Ex. 2.  The agents released petitioner on May 6, 2024, pending his immigration proceedings.  Doc. 4-1 at ¶ 9; Doc. 1-3 at 2; *see* Doc. 10-1 at 2, ¶ 6.  He was not required to post bond or wear an ankle monitor.  Doc. 4-1 at ¶ 9.  The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Petitioner's evidence indicates that following his release he lived in San Francisco, found employment, paid taxes, obtained a driver's license, and began a relationship with a U.S. citizen.  *Id.* ¶¶ 10–11.  He is a devout Jehovah's Witness and is heavily involved with his church.  Doc. 4-

1 at ¶¶ 11, 28; *see* Doc. 1-4 (letters of support from friends, family, church, and community members).  Petitioner has no criminal record.  *Id.*; Doc. 10-1, Ex. 1 at 6.

On June 26, 2024, petitioner appeared before the San Francisco Immigration Court for an advisal of right, and the court granted his request for a continuance to find an attorney.  Doc. 10-1 at ¶ 7.  Prior to the next hearing, petitioner filed an application for asylum and withholding of removal.  Doc. 4-1 at ¶¶ 13–15.  He next appeared for a master calendar hearing at the San Francisco Immigration Court on May 6, 2025, and the court granted another continuance.  *Id.* ¶ 15; Doc. 10-1 at ¶ 8.

On July 8, 2025, petitioner appeared for a further hearing before the San Francisco Immigration Court, at which the immigration judge sustained the charge of removability.  Doc. 4-1 at ¶ 16.  At the hearing, the government also moved to dismiss petitioner's case, which the immigration judge denied.  *Id.*; Doc. 10-1, Ex. 1 at 8.  The government apparently moved to dismiss petitioner's immigration case with the intention of placing petitioner into expedited removal proceedings.  In addition to denying the government's motion to dismiss, the immigration judge set a final merits hearing in 2026 on petitioner's applications for asylum and withholding of removal.  Doc. 4-1 at ¶ 16; Doc. 10-1, Ex. 1 at 8.  Notwithstanding the immigration judge's denial of the motion to dismiss, ICE agents arrested petitioner when he exited the courtroom.  Doc. 4-1 at ¶ 18; Doc. 10-1, Ex. 1 at 8.  Agents took petitioner to a facility located in Bakersfield, in the Eastern District of California, where petitioner remains detained.  *Id.* ¶ 22; Pet. ¶ 22.

Petitioner's removal proceedings were subsequently transferred to the Adelanto Immigration Court.  Doc. 4-1 at ¶ 17.  The government then filed a renewed motion to dismiss petitioner's immigration case, which was granted.  *Id.*  Petitioner states that he intends to appeal that order and indicates that he is currently awaiting a credible fear interview.  *Id.*  Petitioner sought a custody redetermination, which the Adelanto immigration judge denied on July 25, 2025, finding that under *Matter of Q. Li.*, 29 I&N Dec. 66 (BIA 2025), the immigration court lacked jurisdiction to consider that request.  *See* Doc. 1-3 at 26–27.

On August 8, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

1  motion for temporary restraining order, Doc. 4.  The Court ordered the government to file an

2  opposition and petitioner to file a reply. Docs. 6, 11.  On August 14, 2025, the government filed

3  its opposition.[1]  Doc. 10.  Petitioner filed a reply on August 18, 2025.  Doc. 12.

4  **II.    Legal Standard**

5       The standards for issuing a temporary restraining order and a preliminary injunction are

6  "substantially identical."  *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839

7  n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of

8  right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553

9  U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is

10  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

11  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

12  public interest."  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*

13  *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12

14  (1982)).  "Likelihood of success on the merits is a threshold inquiry and is the most important

15  factor."  *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting

16  *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only

17  show that there are serious questions going to the merits—a lesser showing than likelihood of

18  success on the merits—then a preliminary injunction may still issue if the balance of hardships

19  tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Friends of the*

20  *Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations

21  omitted).

22  ///

23

---

24  [1] In their opposition, respondents move "to strike and dismiss all unlawfully named officials
   under § 2241."  Doc. 10 at 1, n.1.  Where an individual brings a "core" habeas petition
25  challenging present physical confinement, the proper respondent is typically the immediate
   custodian.  *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).  If respondents seek to dismiss
26  other respondents from this action, they must do so in a properly noticed motion.  *Ortega v.*
27  *Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request
   for court order must be made by motion. As a result, a request for affirmative relief is not proper
28  when raised for the first time in an opposition.").

4

1    III.    **Discussion**

2        a.    **Likelihood of Success on the Merits**

3        Petitioner asserts that he possesses a protected liberty interest under the Due Process

4    Clause and that, under the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), he

5    is entitled to a pre-deprivation bond hearing.[2]  Doc. 4 at 10–21.

6        The government argues that petitioner is not entitled to the protections of the Due Process

7    Clause, asserting that petitioner is an applicant for admission to the United States and "has only

8    those rights regarding admission that Congress has provided by statute."  Doc. 10 at 6 (quoting

9    *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020)).  Noting that Congress possesses "plenary

10    power to make rules for the admission of" noncitizens, *id.* (quoting *Kleindienst v. Mandel*, 408

11    U.S. 753, 766 (1972), the government argues that petitioner's "rights are limited to whatever

12    statutory rights Congress provides."  *Id.*

13        This argument is unpersuasive.  First, it fails to appreciate the distinction between persons

14    already located inside the United States, like petitioner, and individuals attempting to enter the

15    United States, like the petitioner in *Thuraissigiam*.  "It is well established that certain

16    constitutional protections available to persons inside the United States are unavailable to aliens

17    outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United*

18    *States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763,

19    784 (1950)).  "But once an alien enters the country, the legal circumstance changes, for the Due

20    Process Clause applies to all 'persons' within the United States, including aliens, whether their

21    presence here is lawful, unlawful, temporary, or permanent."  *Id.*

22        Second, the government's argument misconstrues the nature of the challenge that

23    petitioner brings in this case, which is a challenge to his present detention.  *Thuraissigiam* held

24    that a petitioner who was stopped at the border did not have any due process rights *regarding*

25    *admission into* the United States.  *Thuraissigiam*, 591 U.S. at 107.  However, petitioner's

26    _____

27    [2] In the conclusion section of his motion, petitioner also requests an order prohibiting respondents
    "from sending [petitioner] to any place outside of the United States."  Doc. 4 at 23.  As
    petitioner's motion does not address the basis for such relief, this Order does not further address
28    that request.

5

1  challenges his re-detention, without a hearing, when petitioner had been in full compliance with

2  his release conditions for over a year and had appeared as required in his immigration court

3  proceedings, including immediately prior to ICE's arrest of him.  *See Padilla v. ICE*, 704 F. Supp.

4  3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction

5  between a challenge to admission and a challenge to detention).

6      "Although the Supreme Court has described Congress's power over the 'policies and rules

7  for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive

8  and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process

9  Clause stands as a significant constraint on the manner in which the political branches may

10  exercise their plenary authority"—through detention or otherwise.  *Hernandez*, 872 F.3d at 990

11  n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695).  The Due Process Clause

12  protects petitioner, a person inside the United States, from unlawful detention.  *See Zadvydas*, 533

13  U.S. at 693.

14      Next, the government asserts that petitioner is mandatorily detained pursuant to 8 U.S.C.

15  § 1225(b)(1), and argues that, in other contexts, the Supreme Court has upheld mandatory

16  detention schemes.[3]  Doc. 10 at 4–5.  In *Demore v. Kim*, the Supreme Court upheld the

17  constitutionality of § 1226(c), a mandatory detention provision, on a facial challenge.  *Demore v.*

18  *Kim*, 538 U.S. 510, 513 (2003).  A facial challenge requires a plaintiff to show that a statute is

19  "unconstitutional in every conceivable application."  *Foti v. City of Menlo Park*, 146 F.3d 629,

20  635 (9th Cir. 1998).  In contrast, an as-applied challenge requires a plaintiff to show only that

21  "the application of the statute to a specific factual circumstance" is unconstitutional.  *Hoye v. City*

22

23  [3] Petitioner disputes that he is detained under § 1225(b)(1), as ICE agents arrested him while he
was still pending immigration proceedings before the Immigration Court under § 1229a.  Doc. 12

24  at 6.  The Court need not decide this issue for purposes of this motion.  *See Maklad v. Murray*,
No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *5 (E.D. Cal. Aug. 8, 2025).  Following

25  petitioner's detention, the Adelanto immigration judge found that petitioner's re-detention was
subject to § 1225(b), and that, under *Matter of Q. Li*, 9 I&N Dec. 66 (B.I.A. 2025), the

26  immigration court lacked statutory jurisdiction to provide petitioner with a bond hearing.  Doc. 1-
3 at 26.  Thus, whether or not the immigration judge was correct, petitioner will not receive a

27  bond hearing in the immigration court unless the Court grants relief on his as-applied

28  constitutional due process claim.

6

1    *of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011).  As other courts have explained in considering

2    *Demore*, its conclusion that § 1226(c)'s mandatory detention scheme is constitutional in some of

3    its applications "does not mean that the Court does not have the power to grant petitions for

4    habeas corpus raising *as-applied* constitutional challenges to [] detention without a bond

5    hearing."  *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022).  Here, petitioner

6    presses an as-applied constitutional challenge: he argues that the Due Process Clause bars the

7    government from re-detaining him without first providing a bond hearing.  Doc. 4 at 7–23.  As

8    the government acknowledges, "the constitutionality of mandatory detention under § 1225(b)(1)

9    is an open question in the Ninth Circuit."  Doc. 10 at 5 (citing *Abdul-Samed v. Warden of Golden*

10    *State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *5 (E.D. Cal.

11    July 25, 2025)).[4]

12        Petitioner's as-applied constitutional challenge is analyzed "in two steps: the first asks

13    whether there exists a protected liberty interest under the Due Process Clause, and the second

14    examines the procedures necessary to ensure any deprivation of that protected liberty interest

15    accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL

16    1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490

17    U.S. 454, 460 (1989)).

18                        **1.  Liberty Interest**

19        A protected liberty interest may arise from a conditional release from physical restraint.

20    *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

21    arrest and detain an individual, a protected liberty interest under the Due Process Clause may

22
23    [4] The government also argues that petitioner's motion goes beyond a request to preserve the status
      quo and instead inappropriately seeks "the ultimate relief he demands in this case," citing *Senate*
24    *of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992).  Doc. 10 at 4.  In *Mosbacher*, the trial
      court ordered as preliminary relief the release of data that the state sought to keep private, and
25    once the data was released the state would "have lost the whole case for all practical purposes."
      *Mosbacher*, 968 F.2d at 978.  In that context, the Court held that "judgment on the merits in the
26    guise of preliminary relief is a highly inappropriate result."  *Id.*  But awarding temporary relief of
      the kind requested here does not constitute a final judgment on the merits in this case or foreclose
27    further litigation of the issues raised in petitioner's habeas petition.  *See Castellon v. Kaiser*, No.
      1:25-cv-00968-JLT-EPG, 2025 WL 2373425, at *7 n.7 (E.D. Cal. Aug. 14, 2025) (rejecting
28    similar government argument).

1    entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

2    requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.

3    778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

4    (same, in parole context).  To determine whether a specific conditional release rises to the level of

5    a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

6    conditional release in the case before them with the liberty interest in parole as characterized by

7    *Morrissey*."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

8    marks and citation omitted).

9        In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide

10    range of things open to persons" who have never been in custody or convicted of any crime,

11    including to live at home, work, and "be with family and friends and to form the other enduring

12    attachments of normal life."  *Morrissey*, 408 U.S. at 482.  "Though the [government] properly

13    subjects [the parolee] to many restrictions not applicable to other citizens, his condition is very

14    different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit

15    promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The

16    revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations

17    omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  *Id.* at

18    481–84.

19        Petitioner's release is similar.  It allowed him to live with his loved ones in the

20    community, to participate in the activities of his church, and to earn a living.  DHS's release of

21    petitioner in 2024 reflected a determination that petitioner did not pose a flight risk or danger to

22    the community.  *See Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8).  Petitioner

23    indicates that he has no criminal record, which the government does not challenge.  Following his

24    release in 2024, petitioner complied with his release terms and appeared at all immigration

25    proceedings as required.  The government rearrested petitioner without showing any changed

26    circumstances, contradicting the "implicit promise that [petitioner's freedom] will be revoked

27    only if he fails to live up to the [release] conditions."  *Morrissey*, 408 U.S. at 482.

28        The Court finds that petitioner has a protected liberty interest in his release.  *See*

8

1   *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

2   2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

3   is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

4   1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

5   been released have a strong liberty interest).  The Court must therefore determine what process is

6   due before the government may terminate his liberty.

7                           **2.  Due Process Requirements**

8          Due process "is a flexible concept that varies with the particular situation."  *Zinermon v.*

9   *Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation are

10  evaluated using the *Mathews v. Eldridge* factors:

11              First, the private interest that will be affected by the official action;
             second, the risk of an erroneous deprivation of such interest through
12           the procedures used, and the probable value, if any, of additional or
             substitute procedural safeguards; and finally, the government's
13           interest, including the function involved and the fiscal and
             administrative burdens that the additional or substitute procedural
14           requirement would entail.

15  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993

16  (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

17         Turning to the first *Mathews* factor, petitioner has a substantial private interest in

18  remaining free from detention.  "Freedom from imprisonment—from government custody,

19  detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due

20  Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner has been out

21  of custody for over thirteen months, and during that time, established extensive ties and life in the

22  community.  His detention denies him that freedom.

23         Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the

24  petitioner] has not received any bond or custody redetermination hearing."  *A.E. v. Andrews*, No.

25  1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil

26  immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a

27  noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690;

28

9

1  *Padilla*, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history and indicates that he has

2  attended every court hearing since he arrived in the United States.  Doc. 4-1 at ¶¶ 13–17.  The

3  government does not dispute this and did not present evidence that petitioner was a flight risk or

4  danger to community.  Nonetheless, ICE detained him, *id.* ¶¶ 7–9, and the government has not

5  given any reason why it did so, other than arguing that he is subject to mandatory detention based

6  on the government's decision to pursue expedited removal, *see* Doc. 10.  Petitioner has not been

7  provided any procedural safeguards to determine whether his detention is justified, and his

8  request for a custody redetermination was denied because the immigration judge found that she

9  lacked jurisdiction.  *See* Doc. 1-3 at 26–27.  Given the absence of any procedural safeguards, "the

10  probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL

11  1424382, at *5.

12       Third, the government's interest in detaining petitioner without a hearing is "low."

13  *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6.  In

14  immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL

15  691664, at *6.  The government's interest is further diminished where a person "has consistently

16  appeared for [his] immigration hearings . . . and [] does not have a criminal record," *Pinchi*, 2025

17  WL 1853763, at *2, as is the case here.

18       On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

19  should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due

20  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived

21  of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542

22  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127

23  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

24  kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has

25  held that Due Process requires a pre-deprivation hearing before those released on parole from a

26  criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The

27  same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.

28       Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-*

10

1  deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677,

2  at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025

3  WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Singh*,

4  2025 WL 1918679, at *8–9; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071,

5  2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH,

6  2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH,

7  2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

8  With these considerations in mind, petitioner is likely to succeed on the merits.

9  **b. Irreparable Harm**

10  Turning to the second *Winters* factor, the Court notes that "[i]t is well established that the

11  deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*,

12  872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an

13  alleged deprivation of a constitutional right is involved, most courts hold that no further showing

14  of irreparable injury is necessary."[5] *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir.

15  2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

16  As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual"

17  because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514,

18  532–33 (1972). Thus, petitioner faces irreparable harm absent a temporary restraining order.

19  **c. Balance of Equities and Public Interest**

20  When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird*

21  *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice

22  "between [minimally costly procedures] and preventable human suffering," as discussed above,

23  the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."

24  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

25  The public interest also weighs in petitioner's favor. "The public has a strong interest in

26

27  [5] The government points out that this presumption does not apply when a party fails to show a likelihood of success on the merits. *See Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). However, as explained in the previous section, petitioner has made that showing.

28

11

1  upholding procedural protections against unlawful detention, and the Ninth Circuit has

2  recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL

3  1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)

4  (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

5  838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's

6  constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

7       In conclusion, the Court finds that the requirements for issuing a temporary restraining

8  order are met.

9            **d.  Burden of Proof**

10      The parties dispute whether the burden of proof should fall on petitioner or the

11  government at the bond hearing.  The Court finds that in this context the burden is more

12  appropriately placed on the government.  *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107

13  (W.D. Wash. 2019); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-

14  00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025).

15      In *Singh v. Holder*, the Ninth Circuit held, in the context of hearings provided for those

16  detained under § 1226(c), that "the substantial liberty interest at stake" warranted placing the

17  burden on the government to "prove by clear and convincing evidence that an alien is a flight risk

18  or a danger to the community to justify denial of bond."  *Singh v. Holder*, 638 F.3d 1196, 1203

19  (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see

20  also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that *Singh* was

21  based on general principles of due process).  "Because it is improper to ask the individual to

22  'share equally with society the risk of error when the possible injury to the individual'—

23  deprivation of liberty—is so significant, a clear and convincing evidence standard of proof

24  provides the appropriate level of procedural protection."  *Id.* at 1203–04 (quoting *Addington v.

25  Texas,* 441 U.S. 418, 427 (1979)).  These same concerns are present here.

26      The Ninth Circuit later extended these principles to bond hearings for those detained

27  under § 1225(b) and § 1231(a).  *See Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011);

28  *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("*Rodriguez*").  Although the

1    Supreme Court subsequently held in *Jennings* that the constitutional avoidance canon could not

2    be used to read a bond hearing requirement into the statute, it did not address an as-applied

3    constitutional due process challenge.  *Jennings*, 583 U.S. at 304–06, 312 ("Because the Court of

4    Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits[,] .

5    . . we do not reach those arguments.").  *Singh* and *Rodriguez* "relied on the Due Process Clause in

6    determining" who should bear the burden of proof at those bond hearings.  *Rodriguez Diaz*, 53

7    F.4th at 1202; *see Singh*, 638 F.3d at 1203–06.  The issue of the burden of proof at a hearing

8    required by due process therefore appears to remain governed by *Rodriguez* and its extension of

9    *Singh*'s requirements to bond hearings for § 1225(b) detainees.  *See Maliwat v. Scott*, No. 2:25-

10   CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025) (applying *Singh* in

11   § 1225(b) case); *Banda*, 385 F. Supp. 3d at 1107 (same); *Abdul-Samed*, No. 1:25-CV-00098-

12   SAB-HC, 2025 WL 2099343, at *8 (same).

13       The government points to *Rodriguez Diaz*, which held that § 1226(a), which places the

14   burden of proof on the detainee at a bond hearing, was constitutionally adequate.  *Rodriguez*

15   *Diaz*, 53 F.4th at 1210.  But "[s]ection 1226(a) offers substantial procedural protections to

16   detained persons," *id.* at 1194, which cannot be said of § 1225(b)(1).  In that regard, § 1225(b)(1)

17   is more like § 1226(c), as both mandate detention.  The government also argues that *Zadvydas*

18   placed the burden on the petitioner to "provide[] good reason to believe that there is no significant

19   likelihood of removal in the reasonably foreseeable future" before making "the government

20   respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  But the

21   cited portion of *Zadvydas* outlined the appropriate procedure to be used at a preliminary showing

22   on a challenge to prolonged detention, not whether the burden of proof should fall on the detainee

23   or the government at any bond hearing to determine whether the detainee was a flight risk or

24   danger to the community.  *See id.*

25       Petitioner's immediate release is required to return him to the status quo ante—"the last

26   uncontested status which preceded the pending controversy."  *Pinchi*, 2025 WL 1853763, at *3;

27   *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10,

28   2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025)

1    (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-

2    11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*,

3    No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).  Respondents

4    are ordered to release petitioner immediately.  They may not re-detain petitioner unless the

5    government proves by clear and convincing evidence at a bond hearing before the San Francisco

6    Immigration Court that petitioner is a flight risk or danger to the community.

7         The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  "[T]he party

8    affected by the injunction [has the] obligation of presenting evidence that a bond is needed, so

9    that the district court is afforded an opportunity to exercise its discretion in setting the amount of

10   the bond."  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th

11   Cir. 2003).  The government asks the Court to require petitioner to post security but does not

12   explain how it risks harm without such a security bond.  Doc. 10 at 8.  Courts regularly waive

13   security in cases like this one, and the government has not established a need to impose a security

14   bond in this case.  *See, e.g.*, *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025

15   WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL 1918679, at *9.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    **IV.    Conclusion and Order**

2          Accordingly, petitioner's motion for temporary restraining order, Doc. 4, is GRANTED.

3    Respondents are ordered to immediately release petitioner from custody.  Respondents may not

4    re-detain petitioner without a pre-deprivation bond hearing before a neutral arbiter at which the

5    government must prove by clear and convincing evidence that petitioner is a flight risk or danger

6    to the community such that his physical custody is required.

7          Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary

8    injunction should not issue pending a final disposition of this matter.  Respondents shall file any

9    further response to petitioner's motion by August 28, 2025.  Petitioner may file a reply by

10   September 2, 2025.  The parties may stipulate to extend this briefing schedule.  This temporary

11   restraining order, which is issued following briefing by both parties, shall remain in effect

12   pending the Court's ruling on the motion for preliminary injunction.

13

14   IT IS SO ORDERED.

15      Dated:   August 21, 2025

                                         _____
16                                       UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28